IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

SHELLEY PAINE, on behalf of herself )
and all other similarly situated )
)
v. ) NO. 3:14-2005
)
INTREPID U.S.A., INC. )

TO: Honorable William J. Haynes, Jr., Senior District Judge

# REPORT AND RECOMMENDATION

By Order entered October 27, 2014 (Docket Entry No. 7), this action was referred to the Magistrate Judge, pursuant to Rules 72(a) and (b) of the Federal Rules of Civil Procedure, to address any motions or other pretrial matters.

Presently pending before the Court is the motion to dismiss or to transfer venue (Docket Entry No. 31) filed by Defendant Intrepid U.S.A., Inc., to which the Plaintiffs have filed a response in opposition (Docket Entry No. 37). Also before the Court is the Defendant's reply (Docket Entry No. 41). For the reasons set out below, the Court recommends that the motion to dismiss or to transfer venue be denied.

## I. BACKGROUND

Shelley Paine ("Paine"), the named Plaintiff, is a resident of Lewisburg, Tennessee. On October 21, 2014, she filed this lawsuit as a collective action on behalf of herself and all similarly

situated individuals, pursuant to § 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), against Intrepid U.S.A., Inc. ("Intrepid USA") to recover unpaid wages. The Plaintiff avers that venue for this action properly lies in the Middle District of Tennessee, pursuant to 28 U.S.C. § 1391, because the Defendant resides in this judicial district and because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

Plaintiff Paine contends that the Defendant wrongfully classified her and other similarly situated employees as exempt from overtime compensation under the FLSA, 29 U.S.C. §§ 201 et seq., and failed to pay for all time worked and for overtime wages in violation of the FLSA. She asserts that she worked as a home health care nurse for Intrepid USA's Nashville office from August 2012, to February 2014, and that her salary was based on both a flat fee for patient visits, as well as hourly wages for other types of work activities such as attending mandatory meetings, attending other meetings and conferences, and being "on call" for a certain number of hours outside of normal business hours. She also alleges that she spend several hours of uncompensated time each day, including, but not limited to, driving to and from patients' homes, completing paperwork and charting regarding patient visits, delivering samples to the lab, and receiving telephone calls from patients. Paine alleges that she typically worked between fifty (50) and sixty (60) hours each week, and that the Defendant did not compensate her at the required one and one half-times her regular rate for hours worked over forty (40) in a week. She contends that, on the basis of her observations and conversations with other employees of the Defendant, the Defendant pays other skilled home health workers using the same compensation scheme, and that Defendant's other skilled home health

2

workers also often work more than forty (40) hours in a week without compensation at the required one and one half-times their regular rate.[1]

On December 18, 2014, Paine filed a motion (Docket Entry No. 20) for an order (1) conditionally certifying a collective action of similarly situated employees pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and (2) authorizing notice of this action to those members of the conditionally certified collective action. She requests that this Court conditionally certify an FLSA collective action consisting of all individuals who, during any time since October 21, 2011, have been (i) employed by the Defendant, (ii) classified by the Defendant as overtime-exempt, and (iii) paid, in part, on a fee-per-visit basis. See Docket Entry No. 20. As support for the motion, Paine submits declarations from other home health care workers who worked for the Defendant in Tennessee, Minnesota, Missouri, and Georgia under the same salary structure that is alleged in the Complaint. See Docket Entry Nos. 23-26. By Order entered February 23, 2015 (Docket Entry No. 43), briefing and consideration of this motion was deferred until resolution of the Defendant's motion to dismiss or to transfer venue.

By its motion to dismiss or to transfer venue, the Defendant seeks dismissal under Rule 12(b)(2), asserting that the Court does not have personal jurisdiction over it. The Defendant states that it is a Minnesota corporation with a principal place of business in Dallas, Texas, and that it does not have offices in Tennessee, has only one remote worker in Tennessee who works out of her home, does not hold a bank account in Tennessee, does not reside in or conduct its business operations in Tennessee, is not a registered corporate entity in Tennessee, has never filed or been

---

[1] Subsequent to the filing of the complaint, notices of consent to become opt-in party plaintiffs in the action pursuant to 29 U.S.C. § 216(b) were filed by ten individuals. See Docket Entry Nos. 14-19, 28-29, and 47-48.

required to pay Tennessee taxes, and does not maintain business relationships with Tennessee residents. The Defendant contends that it does not and did not employ Paine or any of the opt-in plaintiffs ("the Plaintiffs") in this action but merely acts as a service provider that processes payments and issues payroll checks for the four local entities that actually employed the Plaintiffs. The Defendant asserts that, although these entities are subsidiaries of a company that is wholly owned by the Defendant, the Defendant does not exercise any control over the Plaintiffs. In short, the Defendant argues that there are no facts that support the assertion of personal jurisdiction over it by this Court or that support the Plaintiffs' contention that a substantial part of the events or omissions giving rise to the claims occurred in this District. The Defendant further seeks dismissal of the action under Rule 12(b)(3), contending that venue in this District is improper under 28 U.S.C. § 1391(b). Alternatively, the Defendant requests that the Court transfer this action to the Northern District of Texas under 28 U.S.C. § 1404(a). In support of its motion, the Defendant relies upon the affidavit of John Nix, the Chief Financial Officer for the Defendant. See Docket Entry No. 32-1.

In response, the Plaintiffs contend that there is evidence supporting their assertion that the Defendant was involved in their employment on a sufficient level to warrant the finding of personal jurisdiction over the Defendant in Tennessee. They contend that they were paid by the Defendant, that they received tax forms identifying the Defendant as their employer, that the Defendant was the entity that employed them, that an employee manual was issued to Tennessee employees indicating that the Defendant was their employer and directing employment related issues to the Defendant at its corporate office, that the Defendant took active roles in determining pay, benefit, and leave issues and that employees were told that the Defendant controlled such matters, and that a disability policy issued listed the Defendant as their employer. The Plaintiffs also assert that the Defendant maintains

4

an interactive website describing its presence in Tennessee, advertising job openings in Tennessee, and enabling individuals in Tennessee to apply for employment via the website and that there is evidence that the Defendant and its corporate subsidiaries shared a physical address, corporate officers, and interactive computer system, and that corporate officers of the Defendant traveled to Tennessee. The Plaintiffs further argue that venue is appropriate in this District and that the action should not be transferred to the Northern District of Texas. In support of their response, the Plaintiffs rely on the declarations of Vicky Tataryn (Docket Entry No. 38) and Shelley Paine (Docket Entry No. 39), the affidavit of Jerry Martin (Docket Entry No. 40), and the affidavit of John Nix submitted by the Defendant.

## II. CONCLUSIONS

A. Personal Jurisdiction

Due Process requires that the Defendant be subject to the personal jurisdiction of the Court. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). As the party bringing the lawsuit, the Plaintiff must establish that this Court has personal jurisdiction over the Defendant. See Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002); Nationwide Mut'l Ins. Co. v. Tryg Int'l Ins. Co., Ltd., 91 F.3d 790, 793 (6th Cir. 1996).

In a case in which a federal court's subject matter jurisdiction over a case is based on a federal question, personal jurisdiction over a defendant exists "if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[ ] due process." Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002) (citation

omitted).  When the state's long-arm statute extends to the limits of the due process clause, the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates constitutional due process.  See Nationwide Mut. Ins. Co., 91 F.3d at 793.  Because the Tennessee long-arm statute has been interpreted as "coterminous with the limits on personal jurisdiction imposed by the due process clause," Payne v. Motorists' Mut. Ins. Cos., 4 F.3d 452, 454 (6th Cir. 1993), the only inquiry is whether exercising personal jurisdiction over the Defendant is consistent with federal due process requirements.  Bridgeport Music, Inc. v. Still N The Water Pub., 327 F.3d 472, 477 (6th Cir. 2003).

The bedrock principle of personal jurisdiction due process analysis is that, when the Defendant is not physically present in the forum, it must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).  "Minimum contacts" exist when "the Defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); Youn v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003).  The minimum contacts necessary to establish personal jurisdiction can either be general or specific.  Air Prods. & Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 550 (6th Cir. 2007); Reynolds v. International Amateur Athletic Fed'n, 23 F.3d 1110, 1116 (6th Cir.1994).  General personal jurisdiction requires the Defendant to have "continuous and systematic" contacts in the forum state such that the forum court may exercise jurisdiction over the Defendant regardless of whether the claim at issue is related to the Defendant's activities in the state.

6

Neogen Corp., 282 F.3d at 889. Specific personal jurisdiction, on the other hand, is based on the Defendant's contacts with the forum state to the extent that those contacts arise from the claims brought by the Plaintiff. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). See also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); Neogen Corp., 282 F.3d at 888.

In this action, the Plaintiffs argue only that personal jurisdiction over the Defendant is established on the basis of specific jurisdiction. See Docket Entry No. 9. Specific jurisdiction exists when the action "aris[es] out of or related to the defendant's contacts with the forum." Helicopteros Nacionales de Columbia, 466 U.S. at 414 n. 8. In Southern Machine Co., Inc. v. Mohasco Indus., Inc., 401 F.2d 374 (6th Cir. 1968), the Sixth Circuit summarized the governing principles in a three-part test for determining whether specific jurisdiction exists:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence of the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Id. at 381 (footnote omitted). See also Community Trust Bancorp, Inc. v. Community Trust Fin. Corp., 692 F.3d 469, 471 (6th Cir. 2012). The Sixth Circuit has held that "each criterion represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked." LAK, Inc. v. Deer Creek Enters., 885 F.2d 1293, 1303 (6th Cir. 1989). As the Sixth Circuit stated, "[t]he 'sine qua non' of personal jurisdiction is the purposeful availment factor under which the defendant must 'purposefully avail[] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Dean v.

7

Motel 6 Operating L.P., 134 F.3d 1269, 1273 (6th Cir.1998) (quoting Burger King Corp., 471 U.S. at 475). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" Burger King, 471 U.S. at 475 (citations omitted).

When the defense of lack of personal jurisdiction is raised in a motion brought under Rule 12(b)(2), the Plaintiff need only make a prima facie showing of personal jurisdiction. Carrier Corp. v. Outokumpu Oyj, 673 F.3d 430, 449 (6th Cir. 2012); Theunissen v. Matthews, 935 F.2d 1454, 1458-59 (6th Cir. 1991). The prima facie burden on the plaintiff is "relatively slight," and the Court should not weigh the controverting assertions of the party seeking dismissal. Air Prods. & Controls, Inc., 503 F.3d at 549; Theunissen, supra; Vireo Sys., Inc. v. HTG Ventures, LLC, 2015 WL 1893461, *5 (M.D. Tenn. Apr. 27, 2015) (Sharp, C.J.); Seren Motus, LLC v. Club La Maison, Inc., 2015 WL 1622024, *1 (M.D. Tenn. Apr. 10, 2015) (Campbell, J.). When resolving a Rule 12(b)(2) motion without conducting an evidentiary hearing, the Court must view the pleadings and supporting affidavits in the light most favorable to the Plaintiff. Theunissen, supra. See also Estate of Thompson v. Toyota Motor Corp. Worldwide, 545 F.3d 357, 360 (6th Cir. 2008).

The Court has reviewed the parties' filings on this issue and finds that the Plaintiffs have satisfied the prima facie burden of showing that the Court has personal jurisdiction over the Defendant. There is sufficient evidence, at this stage of the proceedings, to show the existence of minimum contacts between the Defendant and Tennessee that satisfy the purposeful availment requirement. Based upon these contacts, the Defendant should have reasonably anticipated being haled into court in Tennessee. The allegations contained in the Complaint and the supporting declarations from Vicky Tataryn (Docket Entry No. 38) and Shelley Paine (Docket Entry No. 39)

evidence involvement and contact between the Defendant and individuals working in Tennessee that is more than random, fortuitous, or attenuated. The evidence of the Defendant's involvement in the payroll and compensation of Tataryn and Paine and of the Defendant's involvement in aspects of Tataryn's employment such as pay, benefits, and work leave shows the purposeful availment of the Defendant with the individuals working in Tennessee. Further, the payroll checks for Paine and Tataryn were purposefully directed toward residents of Tennessee. See Burger King, 471 U.S. at 474 (mail and wire communications across state lines, if they are purposefully directed toward a resident of the forum state, may suffice to establish minimum contacts). The end results of the Defendant's activities concerning Paine and Tataryn were consequences felt in Tennessee, not in Texas. There is nothing before the Court that shows that the alleged contacts between the Defendant and Tennessee are random, fortuitous, or attenuated.[2]

Although it is apparent that there is a structure of corporate subsidiaries under Intrepid, the Plaintiffs have not named Intrepid as the Defendant merely because of its corporate ownership of subsidiaries. The two noted declarations, the evidence of the employee manual provided to Tataryn, and the affidavit statements of John Nix (Docket Entry No. 32-1) concerning an integrated system between Intrepid and subsidiaries of inputting, transferring, and processing payroll and compensation information for Tennessee employees, which is evidence that must be viewed in the light most

---

[2] The Court notes that the operation of an internet website can constitute the purposeful availment of the privilege of acting in a forum state if the website is interactive to a degree that reveals specifically intended interaction with residents of the state. See Bridgeport Music, Inc., 327 F.3d at 483; Unidisc Music, Inc. v. Antibemusic S. r. l., 2014 WL 2573974, *2 (M.D. Tenn. June 9, 2014) (Campbell, J.) Because the Court finds sufficient evidence to support the finding of purposeful availment without reliance upon the Plaintiffs' evidence of the Defendant's internet website, there is no reason for the Court to address whether or not the affidavit of Jerry Martin (Docket Entry No. 40) is proper evidence regarding such a website and its level of interactiveness.

9

favorable to the Plaintiffs, all support the Plaintiffs' contention that Intrepid was actively involved on at least some level in the control and management of Tennessee employees. While the Defendant seeks to discount this evidence and points to counter evidence of its lack of any physical presence in Tennessee, the physical presence of a defendant in a forum state is not required. Air Prods. & Controls, Inc., 503 F.3d at 551. Further, the Defendant's argument that it is merely a corporate owner of the subsidiaries which actually employed the Plaintiffs and has a passive role in the operations of the subsidiaries under it is unavailing at this point in the proceedings. See Bledsoe v. Emery Worldwide Airlines, 258 F. Supp. 2d 780, 787 (S.D. Ohio 2003), aff'd sub nom. Bledsoe v. Emery Worldwide Airlines, Inc., 635 F.3d 836 (6th Cir. 2011) (determining the relationship between wholly owned subsidiary and non-resident corporate parent for the purposes of personal jurisdiction was a factual specific inquiry that was not amenable to resolution on a motion to dismiss prior to discovery).

The second element of the Mohasco test requires that the cause of action must arise from the Defendant's activities in Tennessee. The standard for finding this element is "lenient," and " '[o]nly when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contact." Scotts Co. v. Aventis, S.A., 145 Fed.Appx. 109, 115 (6th Cir.2005) (quoting Mohasco, 401 F.2d at 384 n. 29). The Plaintiffs' FLSA claim clearly relates to the Defendant's contacts with Tennessee.

Finally, if the first two elements are met, an inference arises that the third Mohasco element is also satisfied. Bird, 289 F.3d at 875; Theunissen, 935 F.2d at 1461. The Defendant has not presented a compelling reason why the exercise of personal jurisdiction over it, under the circumstances of this case, would be unreasonable.

B. Venue

The Defendant argues that dismissal of the action is also warranted under Rule 12(b)(3) for improper venue. The Defendant contends that none of the situations set out in 28 U.S.C. § 1391(b) support a finding of venue in this District. Section 1391(b) provides that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

This issue is easily resolved under Section 1391(b)(2) without respect to either Section 1391(b)(1) or (3). The FLSA claims asserted by Plaintiff Paine in the complaint, as well as the claims of opt-in plaintiff Tataryn, are based upon events that occurred in Tennessee and in this District where the employment activity for the Tennessee plaintiffs occurred. Although the purported policies of the Defendant that are at issue may have originated from the Defendant's corporate office in Texas, the application of the policies occurred in Tennessee where Plaintiffs Paine and Tataryn were located and worked. Both of these factors show a substantial connection between Tennessee and the claims at issue. Section 1391(b)(2) does not require the Court to determine where the most substantial events giving rise to the claim occurred; rather venue is proper in "any forum with a substantial connection to the plaintiff's claim." First of Mich. Corp. v. Bramlet,

141 F.3d 260, 263 (6th Cir.1998); Red Strokes Entm't, Inc. v. Sanderson, 2012 WL 1514892, *11 (M.D. Tenn. May 1, 2012) (Trauger, J).

Alternatively, the Defendant requests that this case be transferred to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a) which provides, in pertinent part, that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The burden is on the moving party to prove that transfer is warranted, and the burden is a substantial one. Smith v. Kyphon, Inc., 578 F.Supp.2d 954, 958 (M.D.Tenn. 2008); Blane v. Am. Investors Corp., 934 F.Supp. 903, 907 (M.D. Tenn. 1996). As the permissible language of Section 1404(a) suggests, district courts have broad discretion to determine when party convenience or the interests of justice make a transfer appropriate. Reese v. CNH America LLC, 574 F.3d 315, 320 (6th Cir. 2009).

In reviewing a motion to transfer, the Court is to "consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of interests of justice." Moses v. Business Card Express, Inc., 929 F.2d 1131, 1137 (6th Cir. 1991) (internal quotations omitted); Reese, 574 F.3d at 320. Factors relevant to the convenience of the parties include: (1) the location of willing and unwilling witnesses; (2) the residence of the parties; (3) the location of sources of proof; (4) the location of the events that gave rise to the dispute; and (5) the plaintiff's choice of forum. Sovik v. Ducks Unlimited, Inc., 2011 WL 1397970, *5 (M.D. Tenn. Apr. 13, 2011) (Trauger, J.). Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. Moses, supra; Smith, 578 F.Supp.2d at 962.

The Defendant argues that the Northern District of Texas is the most logical venue[3] for this action because the events that underlie the FLSA claims, i.e., the application of corporate policies regarding wages and hours, "reverberate from Intrepid's Dallas, Texas, headquarters." See Docket Entry No. 32, at 23. The Defendant also contends that the issue of convenience favors transfer of venue because the key decision makers and fact witnesses for the Defendant, six of whom they identify by position, are located there, as are the Defendant's record custodians and corporate records. The Defendant further points to several other factors to show that Plaintiff Paine's choice of venue in this Court should be given little weight and that the most convenient venue for this action is the Northern District of Texas: 1) only Plaintiff Paine and one of the opt-in plaintiffs are located in Tennessee and the nine other opt-in plaintiffs are located in either Minnesota, Missouri, or Georgia; 2) the pending motion to certify this action as a class action suggests that plaintiffs from various different venues may become a part of the action; and 3) this Court has no particular interest in resolving a dispute between a non-resident corporate defendant and numerous non-resident plaintiffs.

The Court has reviewed the parties' filings on the issue and finds that transfer of the action is not appropriate in this case.

As addressed above, the Court finds that some of the events underlying this action arise from Tennessee. Thus, the events underlying this action are not wholly events that occurred in Dallas, Texas. Further, although the Defendant argues that this forum is inconvenient for potential

---

[3] Section 1404(a) permits the transfer of an action only to a district where it might have been brought in the first instance. The Plaintiffs do not dispute that this case could have been brought in the Northern District of Texas. Rather, they assert that transferring the case to the Northern District of Texas is not warranted.

witnesses, the Defendant has not shown that its employee witnesses would be unwilling or unable to come to Tennessee if required. Neither has the Defendant shown that there are specific non-party witnesses who are critical to this case who would be unwilling or unable to come to Tennessee. It is the convenience of non-party witnesses, as opposed to employee witnesses, that is one of the most important factors in the transfer analysis. Smith v. Kyphon, Inc., 578 F.Supp.2d 954, 963 (M.D. Tenn. 2008). As for the opt-in plaintiffs from states other than Tennessee, these individuals have indicated through the act of consenting to become party plaintiffs that they agree to the current venue of this action. As to potential plaintiffs who may enter the action later, the Defendant has not shown that it would be any more inconvenient for those parties to travel to Tennessee than to travel to Texas. One of the parties in this case will necessarily suffer some inconvenience and expense by whatever action the Court takes regarding venue. However, the transfer of venue is inappropriate where it would serve only to transfer the inconvenience from one party to the other. Black v. Open Solutions, Inc., 2005 WL 1882386, *4 (M.D. Tenn. Aug. 9, 2005) (Campbell, J.); Diebold, Inc. v. Firstcard Fin. Servs., Inc., 104 F.Supp.2d 758, 764 (N.D. Ohio 2000). Therefore, the convenience of the parties and witnesses does not weigh strongly in favor of transferring this action to the Northern District of Texas.

In addition, even though corporate records may be physically located in Texas, the location of documentary evidence, as opposed to physical evidence, is a minor consideration given that documents may easily be sent by mail, copied or faxed to a remote location, see Picker Int'l, Inc. v. Travelers Indem. Co., 35 F. Supp. 2d 570, 574 (N.D. Ohio 1998), or sent electronically, and the Defendant has not shown that any documentary evidence in Texas would be unavailable in Tennessee through discovery. Plaintiff's counsel has also indicated that depositions could be

conducted in Texas. While the Defendant is correct that the choice of forum by a plaintiff carries less weight in a potential collective action such as this one, it is still entitled to some consideration. Furthermore, the Defendant has not shown that there is a strong public interest that favors transfer to Texas. This action was brought by a Tennessee resident based upon alleged FLSA violations related to her work within Tennessee. While the action may also involve other plaintiffs who have collective claims against the Defendant, this Court has an interest in resolving the dispute.

## RECOMMENDATION

Based on the foregoing, the Court respectfully RECOMMENDS that the motion to dismiss or to transfer venue (Docket Entry No. 31) filed by Defendant Intrepid U.S.A., Inc., be DENIED.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

JULIET GRIFFIN
United States Magistrate Judge